UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.:18cv1759

----------------------------------------------------------x
NATASHA DUBASH,

       Plaintiff

v.

MATTHEW BRIAN GORDON, E3
INVESTMENT GROUP, LLC and
E3 INVESTMENT GROUP 4, LLC.

       Defendants.
----------------------------------------------------------x

## COMPLAINT

Plaintiff Natasha Dubash (**"Ms. Dubash"**), by and through her undersigned counsel, hereby files this action against Defendants Matthew Brian Gordon (**"Gordon"**), E3 Investment Group, LLC (**"E3 Group"**) and E3 Investment Group 4, LLC (the **"E3 Group 4"**) (E3 Group and E3 Group 4 are collectively, the **"Corporate Defendants"**).  In furtherance thereof, Ms. Dubash respectfully alleges as follows:

## INTRODUCTION

1. This action details a fraudulent scheme in which Gordon, a New York attorney, together with the Corporate Defendants, E3 Investment Group 2, LLC (**"E3 Group 2"**), and E3 Investment Group 12, LLC (**"E3 Group 12"**) (E3 Group 2 and E3 Group 12 are collectively, the **"E3 Cargo Partners"**) exploited the U.S. Citizenship and Immigration Service's (**"USCIS"**) EB-5 Immigrant Investor Program (the **"EB-5 Program"**) to defraud Ms. Dubash, an Indian citizen and a temporary resident of New York.

2. Gordon made several knowing misrepresentations to Ms. Dubash in order to

induce her to invest $500,000.00 (the "**Investment**"), with an additional $55,000.00 paid directly to Gordon for fees (**"Administrative Fees"**), in a phony trucking service business (**"Trucking Business"**) with the promise that Ms. Dubash would (a) obtain lawful residency status in the United States, (b) earn up to 6% return on her Investment, and (c) own and co-manage a Trucking Business that would own ten (10) trucks and employ ten (10) drivers (in order to satisfy the requirements of the EB-5 Program).

3. Ms. Dubash relied on Gordon's misrepresentations and initially paid $500,000.00 plus $55,000.00 in Administrative Fees to an escrow account at UMB Bank, N.A. (**"Escrow Agent"**) pending investment in the limited partnership E3 Cargo 12, LP (**"E3 Cargo"**), which would operate the Trucking Business.

4. Through the use false disclosures, and deceitful offering documents, Gordon fraudulently induced Ms. Dubash into making the Investment and entering into the Agreement of Limited Partnership of E3 Cargo (**"LPA"**) (attached hereto as **"Exhibit A"**), and Amended and Restated Subscription Agreement, dated as of November 11, 2014 (**"Amended SA"**) (attached hereto as **"Exhibit B"**) (LPA and Amended SA are collectively, the **"Agreements"**).

5. Gordon, with the intent to defraud Ms. Dubash, misrepresented several material facts concerning the Trucking Business. Gordon promised Ms. Dubash that she would acquire a direct, exclusive, and first priority interest in the ten (10) trucks by way of the Agreements. However, Gordon's promise was false since the intended limited partnership E3 Cargo was never formed.[1]

6. Two (2) years after Ms. Dubash paid Gordon the initial Investment and

---

[1] The LPA and Amended LPA claim that E3 Cargo is a Delaware limited liability company. However, a search of the Delaware Secretary of State Division of Corporations fails to reveal any corporate filing record for E3 Cargo (record attached hereto as **"Exhibit C"**).

2

Administrative Fees, Gordon induced Ms. Dubash to lend an additional $300,000.00 (**"Additional Loan"**) to the Trucking Business through yet another entity, E3 Group 4, by claiming that E3 Cargo was burning through cash due to certain unforeseen issues in the trucking industry. Gordon claimed that the Trucking Business required additional funding to rectify the situation, and solicited those funds from Ms. Dubash.

7. In reliance on Gordon's representations, Ms. Dubash provided E3 Group 4 with the Additional Loan pursuant to that certain loan agreement (**"Loan Agreement"**) by and between Ms. Dubash and E3 Group 4, and a promissory note (as amended) (**"Note"**) dated, July 14, 2016 (the Loan Agreement and Note (including all amendments) are attached hereto as **"Exhibit D"**).

8. Although the Note had a three 3 month maturity date, Gordon sought several extensions of the maturity date, claiming that E3 Cargo was still experiencing cash flow issues. Pursuant to the final extension, and Note amendment, the principal and interest under the Note was due and payable as of April 21, 2017 (**"Maturity Date"**).  However, to date, E3 Group 4 has failed to repay the Note.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to under 28 U.S.C. § 1367.

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because Ms. Dubash is a citizen of the Republic of India not lawfully admitted for permanent residence in the United States, Gordon is a citizen of New York, and the Corporate Defendants are citizens of Delaware.  The amount in controversy exceeds $75,000.00.

11. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, and 15 U.S.C. § 78aa.  This Court has personal jurisdiction over Defendants, and venue is proper in the

Southern District of New York, because: (a) Gordon, who controls the Corporate Defendants, is a resident of Westchester County, New York, and (b) the Corporate Defendants are located within New York.

## THE PARTIES

12. Ms. Dubash is a citizen of the Republic of India and temporarily resides in the State of New York, New York County.

13. Gordon is a resident of the State of New York with an address at 51 Warren Street, Hastings on Hudson, New York 10706-3945.

14. E3 Group is a Delaware series limited liability company with a principal place of business at 10 East 39th Street, 12th Floor, New York, New York 10016.

15. E3 Group 4 is a series of the E3 Group, a Delaware limited liability company with a principal place of business at 545 5th Avenue, 8th Floor, New York, New York 10017.

## RELEVANT NON-PARTIES

16. E3 Cargo is a Delaware limited partnership allegedly created pursuant to the LPA and the Amended LPA.

17. E3 Group 12 is a Delaware limited liability company, and the general partner of E3 Cargo.

18. E3 Group 2 is a Delaware limited liability company, and a limited partner of E3 Cargo.

19. E3 Group 2 is wholly owned, operated and controlled by Gordon.

20. E3 Group 12 is wholly owned, operated and controlled by Gordon.

## THE FRADULENT SCHEME

21. Gordon, and the E3 Cargo Partners that Gordon controlled, orchestrated a fraudulent scheme to defraud Ms. Dubash, the limited partner in E3 Cargo.

22. Gordon used the EB-5 Program to fraudulently induce Ms. Dubash to pay $500,000.00 to the Escrow Agent, plus pay Gordon $55,000.00 in Administrative Fees.

23. The EB-5 Program provides a method for an immigrant to obtain lawful permanent residence in the United States by paying for capital in a "commercial enterprise" in the United States. After doing so, the immigrant may petition the USCIS (via an **"I-526 Petition"**) to receive conditional permanent residency status for a two-year period.

24. The EB-5 Program requires a showing that the immigrant has placed the required amount of capital at risk for "the purpose of generating a return" on the capital. The immigrant must invest at least $500,000.00 in a "Targeted Employment Area" and create at least ten full-time jobs for United States workers. If the immigrant satisfies these and other conditions within a two-year period, the immigrant may apply to have the conditions removed from her visa, and live and work in the United States permanently.

25. Beginning in 2014, Gordon made several knowing misrepresentations and omissions of material fact to Ms. Dubash in order to induce her invest $500,000.00 plus the Administrative Fees in a non-existent EB-5 Investment Program.

26. In addition to the Agreements, Gordon also presented Ms. Dubash with E3 Cargo's Business Plan (the **"Business Plan"**) (the Agreements and Business Plan are collectively, the **"Offering Documents"**).

27. The Offering Documents constitute fraudulent, false and materially misleading statements regarding the Trucking Business and the Investment.

28. Gordon, through the use of the Offering Documents, knowingly misrepresented to Ms. Dubash that the Investment would fund E3 Cargo, and that the Investment would purchase ten (10) trucks and employ ten (10) drivers.

29. According to the Offering Documents, E3 Group 12 would manage E3 Cargo as its general partner, and the limited partners would be other foreign investors, including Ms. Dubash. Gordon claimed that this would allow E3 Group 12 to manage multiple limited partnerships, and lower the operating costs and expenses in order to generate the 6% return on Ms. Dubash's Investment.

30. However, in October 2014, Gordon met with Ms. Dubash, and suggested that E3 Cargo use $540,000.00 from Ms. Dubash's investment ($555,000.00 deposit minus the $15,000.00 Administrative Fee) to start E3 Cargo's business operations immediately rather than use a bridge lender to purchase the fleet of ten (10) trucks.

31. In order to induce Ms. Dubash into agreeing to this option, Gordon represented that Ms. Dubash would receive 12% annualized interest on the $540,000.00, and once her I-526 petition was approved by the USCIS, the deal would revert back to the original structure of a 6% internal rate of return on Ms. Dubash's Investment (November 3, 2014 email attached hereto as **"Exhibit E"**). On November 11, 2014, as a direct result of Gordon's representations, Ms. Dubash agreed to transfer the $540,000.00 from the Escrow Agent to E3 Cargo directly, under Gordon's name.

32. Upon information and belief, Gordon personally, and as the alter ego of the E3 Cargo Partners, kept Ms. Dubash's $555,000.00 payment and diverted the entire Investment for his personal benefit.

33. Gordon's conduct, as described herein, clearly establishes an intent to defraud Ms.

Dubash.

34. As a result of Gordon's fraudulent conduct, Ms. Dubash was forced to pursue her lawful residency application through other means.

### THE ADDITIONAL LOAN

35. In June 2016, Gordon solicited the Additional Loan from Mr. Dubash.

36. On June 3, 2016, Gordon provided Ms. Dubash with an investor communication which included E3 Cargo's Investor Letter, Balance Sheet, and Profit and Loss Statement for the first half of 2016. In its Investment Letter (attached hereto as **"Exhibit F"**), E3 Cargo claimed it was burning through cash due to certain unforeseen issues in the trucking industry, and that "[t]he state of affairs at E3 Cargo [was] not good." Exhibit F at 2.

37. Gordon also blamed the age of the trucks that were allegedly purchased for the Trucking Business, stating that they were "costing more than double than what 'normal' used trucks cost for maintenance." *Id.* Gordon concluded his pitch for additional capital stating that E3 Cargo's position was currently not sustainable, and that E3 Cargo had exhausted its cash reserves. *See id.* at 3.

39. As a result of Gordon's knowing misrepresentations regarding E3 Cargo (a non-existent entity), Ms. Dubash provided the Additional Loan. The Note was initially for three (3) months. However, when Ms. Dubash questioned Gordon as to when she would receive repayment on the Note, Gordon had additional excuses to avoid payment and sought to extend the maturity date of the Note.

40. On October 11, 2016, Gordon provided Ms. Dubash with another investor communication wherein he continued to claim that E3 Cargo's Trucking Business was not doing well. As a result of Gordon's knowing misrepresentation, Ms. Dubash agreed to extend the Note

7

an additional 3 months to January 14, 2017.

41. By January 2017, Gordon announced that E3 Cargo was in a "difficult spot" (January 2017 investor update attached hereto as **"Exhibit G"**). Gordon also falsely claimed that he was personally funding E3 Cargo's operations.

42. In an attempt to provide Gordon additional time to improve E3 Cargo's financial position, and to allow E3 Group 4 additional time to repay the Additional Loan, Ms. Dubash agreed to extend the Note an additional 3 months to April 21, 2017. However, to date, E3 Group 4 has failed to repay the Note.

43. Ms. Dubash also never received the return on her Investment that was described by Gordon and the Offering Documents. On May 4, 2017, Gordon sent Ms. Dubash an email stating that E3 Cargo would cease operations that week (email attached hereto as **"Exhibit H"**).

44. However, Ms. Dubash's entire Investment in E3 Cargo was a fraud since E3 Cargo could not own a single asset, truck, or employ 10 employees as required by the EB-5 program because it was nonexistent entity. Notwithstanding, Gordon continued to knowingly misrepresent to Ms. Dubash that she could seek permanent residency status through her Investment in E3 Cargo, a non-existent company, or by Gordon's own representations—a defunct company.

45. By diverting Ms. Dubash's funds to different partnerships and eventually to Gordon's own use, Gordon and the Corporate Defendants have knowingly misled Ms. Dubash who believed, as the Offering Documents represented, her Investment would be used solely to fund E3 Cargo, provide the returns, and create the requisite jobs for her permanent residency application under the EB-5 Program.

46. Gordon knowingly engaged in a fraudulent scheme to induce Ms. Dubash to enter

into the Agreements and the subsequent Loan Agreement.

47. Gordon knew that Ms. Dubash purposefully invested in E3 Cargo so that E3 Cargo would own its own trucks and assets, and qualify Ms. Dubash for legal permanent residency.

48. The Offering Documents were materially misleading. Gordon, personally and as the alter ego of the Corporate Defendants, controlled and solely managed all the Defendant and non-party entities, and diverted Ms. Dubash's funds for his purposes.

49. Gordon, personally and as the alter ego of E3 Group, solely controlled the E3 Group 4 and the E3 Cargo Partners, and exercised sole authority and dominion over the same.

50. Gordon clearly acted with the intent to defraud Ms. Dubash. Since E3 Cargo was never formed, E3 Cargo never owned a single truck or employed any employees. Furthermore, the Additional Loan could not have been used to maintain E3 Cargo's operations, as Gordon represented, since the company was never formed.

## FIRST CLAIM FOR RELIEF
### Fraud in the Inducement in Connection With the Limited Partnership Agreement and the Amended And Restated Subscription Agreement
**(Against Gordon)**

51. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 50 above.

52. Gordon fraudulently induced Ms. Dubash to enter into the Agreements by falsely representing to Ms. Dubash that the Investment would finance the purchase and operations of ten (10) trucks. The Business Plan states "[a]t its core, the business model is very simple. It takes $500,000 to finance the purchase and operations of ten trucks. Ten (10) trucks employ at least ten (10) drivers."

53. Ms. Dubash signed the Agreement based on Gordon's knowing

9

misrepresentation to her that the Investment would be used to purchase 10 trucks with drivers.

54. Gordon knew that Ms. Dubash relied on his knowing misrepresentations when she entered into the Agreements.

55. Gordon's representations were false. E3 Cargo was never formed. Therefore, contrary to Gordon's representations in the Offering Documents, E3 Cargo could not own any assets.

56. Gordon, individually and as the alter ego of the Corporate Defendants and the E3 Cargo Partners, intended that Ms. Dubash rely on his knowing misrepresentations.

57. Ms. Dubash relied on the Offering Documents and Gordon's misrepresentations when she entered into the Agreements and paid $555,000.00.

58. Ms. Dubash has sustained actual damages as a direct and proximate result of Gordon's knowing misrepresentations and conduct, as described herein, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Fraud in the Inducement in Connection With the Loan Agreement
### (Against Gordon)

59. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 58 above.

60. Gordon fraudulently induced Ms. Dubash to enter into the Loan Agreement by knowingly misrepresenting to Ms. Dubash that E3 Cargo required additional capital for its operations due to unforeseen issues in the Trucking Business.

61. Ms. Dubash signed the Loan Agreement and provided the $300,000.00 based on Gordon's misrepresentations.

62. Gordon knew that Ms. Dubash relied on his material misrepresentations when

she entered into the Loan Agreement and provided the $300,000.00.

63. Gordon's representations were knowingly false. E3 Cargo was never formed. Therefore, E3 Cargo could not have any operations for which Ms. Dubash's loan funds would be used to sustain.

64. Gordon, individually and as the alter ego of E3 Group 4, intended that Ms. Dubash rely on his misrepresentations.

65. Ms. Dubash relied on Gordon's knowing misrepresentations when she entered into the Loan Agreement and loaned the $300,000.00 to be used to sustain E3 Cargo's alleged operations.

66. Ms. Dubash has sustained actual damages as a direct and proximate result of Gordon's misrepresentations and conduct, as described herein, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### Conversion
### (Against All Defendants)

67. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 66 above.

68. Gordon, individually and as the alter ego of the Corporate Defendants and E3 Cargo Partners, caused the transfer of over half a million dollars from Ms. Dubash to E3 Cargo, a non-existent entity, and E3 Group 4, an entity which Gordon wholly controls and dominates, for the benefit of Gordon. Gordon and the Corporate Defendants misused and converted the Investment and the Additional Loan to their own benefit and never formed E3 Cargo.

69. By virtue of these wrongful acts, Gordon and the Corporate Defendants converted Ms. Dubash's funds to Gordon's own use or the use of other entities under his control. As a

direct result of such wrongful conversion, Ms. Dubash has suffered damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Piercing the Corporate Veil

70. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 69 above.

71. Gordon has complete control over the Corporate Defendants and E3 Cargo Partners such that these entities do not have a separate mind, will, or existence of their own. These entities are a mere façade for Gordon's operations.

72. Upon information and belief the Corporate Defendants and E3 Cargo Partners have been inadequately capitalized. They were organized with little to no assets to achieve the business purpose for which they were formed.

73. Upon information and belief E3 Group is nothing more than a shell company formed to shield Gordon from personal liability and was not adequately capitalized.

74. Gordon has controlled the Corporate Defendants and E3 Cargo Partners in such a manner as to commit fraud, conversion and other unlawful acts as set forth herein.

75. As a direct and proximate result of Gordon's actions, this Court should disregard the corporate form and hold Gordon personally liable to Ms. Dubash in an amount in excess of $855,000.00, plus interest, costs, and other relief.

## FIFTH CLAIM FOR RELIEF
### Breach of Contract
### (Against E3 Group 4)

76. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 75 above.

77. E3 Group 4 entered into a valid contract with Ms. Dubash upon the execution of the Loan Agreement and Note

78. Ms. Dubash performed her obligations and duties required under the Note and Loan Agreement. E3 Group 4's failure to repay the Note (as amended) upon the Maturity Date constitutes a breach of the Loan Agreement and Note.

79. As a direct and proximate result of E3 Group's breach, Ms. Dubash has suffered damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against E3 Group 4)

80. Ms. Dubash re-alleges and incorporates by reference paragraphs 1 through 79 above.

81. E3 Group 4 entered into binding agreements upon the execution of the Loan Agreement and Note.

82. Ms. Dubash performed all of her duties pursuant to the terms of the Loan Agreement and the Note, and provided E3 Group 4 $300,000.00 in loan funds.

83. E3 Group 4 benefitted from the funding Ms. Dubash provided pursuant to the Loan Agreement and the Note. However, E3 Group 4 has failed to perform its obligations under the terms of the Loan Agreement and the Note. E3 Group 4 has failed to repay the Note (as amended) upon the Maturity Date, and, as a result, E3 Group 4 was unjustly enriched to Ms. Dubash's detriment.

### DEMAND FOR RELIEF

WHEREFORE, Ms. Dubash respectfully requests that this Court enter a judgment in favor of Plaintiff Natasha Dubash and against Defendants:

    a.    for actual damages in an amount to be proven at trial, but not less than $855,000.00;

    b.    for interest and costs; and

    c.    for such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: Coral Gables, Florida
        February 27, 2017

Respectfully Submitted,

**HUNTER TAUBMAN FISCHER & LI LLC**

*/s/ Mark David Hunter*
Mark David Hunter, Esquire
New York Bar No. 4017331
Jenny Johnson-Sardella, Esquire
New York Bar No. 4225850
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Telephone:   (305) 629-8816
Facsimile:    (305) 629-8877
E-Mail:       mhunter@htflawyers.com
                jsardella@htflawyers.com